Please be seated. Your Honor, today's case in my call is 220590, resolving to 220591, under the heading of People v. Brass. On behalf of the parents, Mr. Paul Rogers, on behalf of the people, Mr. Marcus Stevens. Now that little changing there has nothing to do with our age, it's just priority. All right, Mr. Rogers, take your seat. Good morning, may it please the Court. Mr. Stevens, Your Honor, as you know, this case, the primary issue is, the only issue is, whether the defendant was properly allowed to waive his right to counsel at the hearing on a petition to revoke his conditional discharge. Now that issue really involves two questions. First, does Rule 401A apply? Second, if it does apply, did the trial court substantially comply with Rule 401A? The answer to the first question is yes, Rule 401A applies. The answer to the second question is no, the trial court did not comply, did not substantially comply with Rule 401A. When did the defendant waive his right to counsel, on what date? Well, he waived it at, he represented himself at the hearing on the petition to revoke conditional discharge. March 8th. March 8th of 2012. Well, did he waive it before that date? Well. What, can we fix the date? There was a period of time in which, when Mr. Brass was first arraigned on the petition to revoke, in December of 2010, by Judge Hanson, he was admonished in accordance with 401A. And at that time, he didn't vote to have the right to counsel, he had counsel appointed. Later, private counsel appeared, and was on the case for about 10 months. Then, maybe more like a year. And then, at that period of time, private counsel was given leave to withdraw, although that was somewhat over Mr. Brass's objection, because the appearance had been filed by Mr. Altamore, an associate from Mr. Altamore's firm appeared, was given leave to withdraw for the entire firm. Mr. Brass said he didn't have a problem with the rest of the firm withdrawing, but he wanted Mr. Altamore. Well, that was on December 12, 2011. Right. Okay, so we're saying there was no waiver on that date. Well, Mr. Brass said he would represent himself later on. Well, but he was given 21 days to find new counsel on that date. Right, right. Okay. But he had not been given the admonishments for over a year. Well, he was certainly admonished on that date that he could represent himself if he wanted to. On which date, Your Honor? December 12, 2011. That's what the record shows. Is that correct? I believe he was given the choice to represent himself, yes. Okay. But the issue isn't whether he knew he had the right to represent himself. The issue is whether he was sufficiently admonished before he was allowed to represent himself. Well, I understand, but we're still trying to fix the date where he indicated that he waived his right to counsel. So we're at December 12th. We've talked about March 8th. Right. So we know he didn't on those dates. So when did he? When did he waive his right to counsel? Right. Yes. Well, my argument is that he never did validly waive his right to counsel. He was allowed to proceed without counsel. So I guess I don't want to get hung up on semantics. What I'm saying is he indicated prior to March 8th, even, that he would be representing himself. Now, whether you want to call that a waiver or not, my point is he shouldn't have been allowed to represent himself at the hearing because he hadn't been adequately admonished. Well, theoretically, on a date that a defendant indicates he wants to represent himself, the court should then admonish him, correct, under pursuant to 401? Yes. Well, 401A does not explicitly require that the admonishment be given on the same date. Correct. However, there is case law that says that's the best practice. Right. And I think the reason for that is obvious is that it avoids the kind of problem that we're having here today to discuss how long of a gap between the admonishments and the waiver is acceptable. So what are we looking at here? Fifteen months. That's what I'm trying to figure out. Fifteen months. So tell me then what dates we're looking at. Well, we're looking at December 10th, 2010, the day he was arraigned on the petition to revoke. On that day, he was admonished by Judge Hanson pursuant to. Now, the question, though, is part of Rule 401A is not just that the admonishments be read but that the court determine that the defendant understands. All right. Let's not deviate yet. We'll get to the understanding part. I still am trying to. Okay. So we have December 10th, 2010. He was admonished. Okay. And the 15 months then is till what date? March 8th, 2012. The date of the hearing. Yes. So that's the date you're saying he indicated he would represent himself. That's the date. No, that's not. Well, what about February 14th? What happened on February 14th? February 14th, he was before Judge Hanson, and he said he was representing himself. But, again, that's in the context of him having invoked counsel at the arraignment in 2010, having hired private counsel shortly thereafter, having had private counsel for about a year, having objected when private counsel was allowed to withdraw, objected in the sense that he said, I want Mr. Altamore. And then subsequent to that, on January 12th of 2012, and again on February 14th of 2012, he conceded, well, yes, I am representing myself. Well, on January 12th, he was asked, will you hire counsel? And he said no. On February 14th, he was asked, will you represent yourself? He said yes. And then the trial court, according to the record, said that it would appoint the public defender if he wanted to. And he also, and the trial court reminded him at that time of the allegations that he faced, correct? That's correct. However, my point is there's two points being made. First of all, again, you have a gap of, I guess, 13, 14 months between when the full admonishments were given and a waiver occurred. And second, you don't have anything on the record to show that he clearly understood what the admonishments were. Is there anything, any case that you're aware of that indicates that the admonishments must be given strictly pursuant to statute, or must there be substantial compliance? It's substantial compliance, Your Honor. And during the course of these hearings that you've been discussing with Justice Zinoff, isn't it true that each judge has, because I think there are two judges involved. Right. Each judge took some time to talk about different elements of those particular, or of that particular issue. Right, that's correct. So is there a case that says you have to do it all at once, or do you just have to make sure, I mean, in the judge's mind, and even the state intervenes on, I think, February 14th and says something that, you know, judge, you know, he was represented by the public defender on a previous occasion, etc. I mean, there's nothing that you've found that says it all has to be at once? No, there's no case that says that. There are cases, as I mentioned before, one of them being People v. Wray, that says that it is the best practice to give it on the same day as the waiver, but there's nothing that says if it's not given on the same day, it's invalid. I mean, for example, if I was in front of a trial judge today and said, I'm thinking about waiving counsel, and I received the admonishments, and I said, I understand them perfectly, the judge said, well, I'm going to give you until tomorrow to decide. And I came back the next day, and I said, I thought about it. I remember what you said. I'm going to represent myself. I don't think there would be a valid argument in that case that the waiver was insufficient or that the admonishments had to be given the very next day, even though it had been given the day before, because you look at the record as a whole. And the question here is, yes, Mr. Brass undoubtedly received all of the admonishments that he was required to be given before he was allowed to represent himself at the hearing. The only time he was given all at once was 15 months before he was allowed to represent himself at the hearing. And, again, to get back to the point I made earlier, there's the remaining question of it's not just what admonishments were given, it's what was his response when asked if he understood the admonishments. Now, the court on several occasions answered questions and actually asked him questions to elicit an indication as to whether or not he understood. Yes. And on December 10th, when Judge Hanson asked him whether he understood, his response was, I guess so. Judge Hanson didn't follow up by saying, well, why are you guessing? What exactly don't you understand? Well, in the context, I mean, the judge may have understood that to mean something else. I mean, that's true. It's hard to get that context from the written word on the page, which we have to look at. Well, that's true. On the other hand, I would remind the court, as I'm sure you know, that there is a presumption against waiver, and that part of the reason why I say that the answer to the question whether there was substantial compliance here, why the answer to that question is no, is because it's not obviously yes. And so given the presumption against waiver, you should construe the record in Mr. Brass's favor. You should construe it against waiver. And when you have an ambiguous answer, like I guess so, or I think I understand, again, we don't know. We don't have the audio. We don't know what the tone of voice was. We don't have the entire context. But when somebody gives that kind of answer, I guess so, I think that the prudent course would be for a trial judge to follow up on that and say, well, I need more than a guess. I need you to be sure that you understand. All right, but then on the trial or the hearing date, Judge Kaufman got a no. Talking to Mr. Brass, he said, to be honest with you, or something like that, no. Exactly. At which point she spends a significant amount of paper time, and I'm assuming a significant part of the hearing time, describing the difference between this hearing and a trial under disorderly conduct and the fact that if he, in this hearing, if he is found to have violated his conditional discharge, he could be sentenced for the same penalties as before. And I don't remember if she actually advised the penalties again, but she spent quite a bit of time with Mr. Brass. She did. And I don't think, however, that she expressly reminded him that he had the right to have counsel. Again, I understand that he had been told that previously. I mean, within a couple weeks, on February 14th. Three weeks, right. Three weeks, right. I understand that. But although Judge Kaufman did spend a lot of time trying to explain to Mr. Brass the difference between a petition to rehear, to revoke, and a trial on the substantive charge, and she periodically said, okay, all right, things like that. Those were, I think if you look at the record, again, keeping in mind the presumption against the waiver, that those were almost rhetorical questions. She didn't, Judge Kaufman did not pause. Mr. Brass said nothing when asked that. There was no indication whether he was given sufficient time to respond or whether Judge Kaufman simply just kept going. And at the end of all of that, Judge Kaufman does not turn or address Mr. Brass and say, Mr. Brass, do you understand everything I've just said? Keeping in mind that he had just, the reason why she took all that time was because he had said, no, I don't really understand. When she's done with that, Judge Kaufman doesn't ask Mr. Brass, now do you understand? Instead, she said, essentially, stay, call your first witness. And that's where I think, you know, if Judge Kaufman had simply taken ten seconds, whatever it would take, to say, Mr. Brass, now do you understand? Before you said you didn't understand. Do you understand now? You'd have a different case. Well, except, you know, he was standing in front of her. She could look at his face, his facial expressions, his body language, in addition to the words and the context. So I don't think that we necessarily have to require that of her since they were face-to-face. Well, I think you don't, again, the presumption is against wavering. And so you don't know, I mean, none of us knows where she was looking, frankly. We don't know what his expression was. We don't know any of that. What we don't know is what we need to know, which is, did he understand? And if you infer from the fact that the judge let him proceed to represent himself, that she was under the impression that he understood, that's an inference I don't think you can make if you're going to honor the presumption against wavering. The part of the statutory authority that I think we're now down to is determining that he understands the following. Right. And then there are three things that should be advised. Right. So you're saying that the only way that that determination can be made is objectively with a question, or you just don't believe that there's any way that the judge sitting there can make that subjective determination? Well, I would answer it this way, and I don't think there has to be an explicit statement on the record coming out of the defendant's mouth, I understand. But I think that, at the very least, there should be a finding by the trial judge indicating, based on your responses, based on your demeanor, I find that you understand the rights that you have under Rule 401A, and I'm going to let you represent yourself. Is there anything that the judge can take into account as this process is going forward concerning the defendant's background, his knowledge or his immaturity within the system, so to speak? Well, I think, yes, that's relevant in the sense of assessing whether you can infer understanding. In the Meeks case, I think it was, the court was careful to point out that the defendant in that case, who was allowed to represent himself, and the court found that properly so, that he was sophisticated in the legal process and so forth. I know that legal sophistication or any particular amount of education is not required to allow somebody to represent himself, but it is relevant, I think, in assessing whether, from an ambiguous record, we can infer an understanding of the rights, the condition precedent for allowing somebody to proceed. In this case, you have somebody who did graduate from high school, who had a little bit of community college credit, who had some experience with the court system, although I would note that according to the presentence report, they had two felony cases in 1999, so 13 years earlier. Since then, had only some traffic cases and the two misdemeanor cases that we're talking about here today. So really only traffic cases. He was, had a stroke. He had and has serious medical problems. Now, there's nothing that affirmatively shows that he was cognitively deficient, but I think you can also look at his performance at the petition to revoke, and the mere fact that he was so confused about the difference between proceeding on the new substantive charge independently and using it as a basis for revoking his conditional discharge, as this is someone who does not understand relatively basic concepts. Well, that concept isn't so basic, counsel. I mean, really, that one isn't. Sometimes even new lawyers have a hard time with that one. I mean, that, with all due respect. Okay. I understand that, but this was not someone who had, was a great facility with the legal system and who grasped that concept easily, especially since it had been explained to him repeatedly. Even when it was explained to him repeatedly, he still didn't get it. He still at the end of it said, so what you're saying is I don't have a right to a jury trial. And I think that is some confusion on his part. And again, I guess ultimately I am leaning on the presumption against the waiver. But if we go back, some confusion on whether or not he had a right to a jury trial. But Justice Hutchinson asked and reminded us what are the three things that he has to understand. Jury trial is not one of them. I understand that. That is not one of them. But it's an example of his inability to grasp exactly what his rights were. So having said all that, I think just to sum up, because I know I'm running short of time. I have a question. Certainly. My question is, when does he have to understand those rights? Prior to waiving counsel. Any time prior? Well, that's where you get into the question about the best practices. Is there any cases out there that you have found that say, well, 20 months is too long, 24 months is too long, six is good enough. I would say, though, that of the cases that were cited in the briefs, here we're talking about 15 months. At least from the time he got all of them all at once to when he was allowed to represent himself. I got the 15 months. The longest case where the gap, the longest gap where a waiver was considered acceptable was one month. And that was the Dennis case, which isn't even a 401A case. It's a 402 case. It's an admonishment before admission to a charge. In the cases that I cited where waivers were not okay, the longest, it was 16 months. Seven months, so less than half this time, or three months. So here we have twice as long, more than twice as long, as a case in which the gap was considered too long. What remedy does the court have for a defendant that comes in every month, every other month and says, yep, I still want to represent myself, but I don't really understand my waiver? At what point, what remedy does the court have to move the case along? I think at that point, the trial court, and I can understand the difficulty in doing this from the trial judge's perspective, but I think it's the duty of a trial judge to say, as much as you might want to represent yourself, and although you have the right to represent yourself, I have a duty to make sure that you understand exactly what that means and exactly what you're facing. And in some cases, I think you can force counsel on people. If they are incompetent to waive, if they do not understand. Would standby counsel be sufficient for you? Well, I don't know that I want to get into that. I'm going to tell you, being incompetent, recalcitrant. He just doesn't understand, and I need another date, Judge. I'm sorry. I just don't understand, and takes another date and another date. At what point, he's not incompetent. It's clear from this transcript, he's not incompetent. Although, kudos to the state's attorney who at least stepped up and said he's confused. Yes, right. But what else would you have had this trial judge do? As I said before. Besides that. Well. I mean, do you understand? He says no. Yes, I. Are you sure? All right, let's do it again. Do you understand? No. I think then, again, and I know there are cases like that where, you know, there's a legitimate concern about gamesmanship and just, you know, faking it, so to speak. And again, I think if a judge perceives the situation that way, I think it's at least incumbent on the trial judge to make a record saying, you say you don't understand, but everything you've said and everything that I know about your background tells me that you really do, and that this is really perfect, that all you're trying to do is erase the proceedings. Here, the trial court didn't make a record on that. Did not make a record. I'm sorry, go ahead. Also, I don't think this is a situation where it appears that Mr. Brass is trying to prolong the proceedings by saying one day I want counsel, the next day I don't want counsel, and going back and forth. He said he wanted counsel. He had private counsel. Private counsel withdrew. Mr. Brass somewhat objected to that, decided after that to represent himself, but never said, but on March 8th didn't say, you know what, I think I want more time to hire counsel again. Did not try to put that proceeding off. He went ahead with it. And, you know, I understand that this is, you know, the law and I think the facts here are not that difficult to understand. It's a matter of interpreting, you know, what these facts really mean in this context. And, again, I come back to kind of a bedrock point, maybe tiresomely so, but that there is a presumption against waiver. So you start with he hasn't waived counsel. And you have to move the ball from there off of that line. And you have to move it far enough to say there was a valid waiver. So on behalf of Mr. Brass, I would ask this Court to find that there was no valid waiver and, therefore, to reverse the order revoking this additional discharge and to send the case back for further proceedings. Thank you. Thank you. Mr. Stevens. Good morning, Your Honors. Good morning, Counsel. Let me jump right into the, you know, whether the question that has been discussed extensively here, whether or not the waiver was actually, or excuse me, whether the admonitions were actually given and understood. The discussion already has fleshed that out, the various points. I think I would agree, or I would state, that the defendant was given numerous, during the course of the proceedings, he was told the nature of the charges, the sentence, and the availability of counsel. At this point, I think we're down to the question of did the defendant understand that? Kind of dancing around a subtle principle of objectivity and subjectivity, as I was understanding your questions before. But before we get to the understanding, what about the long gap in the months, 15 months, counsel pointed out, between the full admonitions that were given all at once when he was arraigned, on the petition, and the date of the hearing, March 8th? That's a problem for the state. I will say, if, this isn't ideal. Counsel said what's ideal. What's ideal is if, before you allow a defendant to proceed to a next critical stage, going pro se, it's probably the best to have the full admonitions and have the determination. I would certainly agree with that. There's no question that that's the best way to do it. So now we're stuck with what's a sufficient way to do it, what's substantial compliance with the record. I guess I would argue that we're saying that a piecemeal, this is admittedly a piecemeal informing of the defendant throughout the course of the proceedings. I set it out in the brief, you know, the various times when that happened. But, yes, I have to admit, you know, it didn't all take place at one time. I don't know of any better cases. Your Honor's asked, you know, are there any cases that say, you know, on what particular time frame? No. I think you have to go back to Meeks and look at the, you know, the totality of the record and the sophisticated, you know, the depth of informing the defendant. And the degree of care with which the judge has undertaken, understanding whether or not the defendant understands those things. So let me just, so you agree that 401A admonishments were required, even though this was a petition to vacate a conditional discharge. Is that what you're saying today here in oral argument? No. Okay. I skipped ahead because I did put a rather provocative statement in the brief, and that's relying on People v. Young, which said 401 is only required at the beginning of the proceedings, and presumably he got it. Well, the facts of Young are distinguishable, aren't they? Could be. I mean, that was the same proceeding, was it not? It was, we were talking in Young about a post-conviction proceeding. Here we're talking about two different proceedings, aren't we? In the sense of? Petition to revoke is not the same proceeding. Well, arguably it is. It's a continuation of the case. It's a revocation of the proceeding in that case. So you're saying? It's a revocation of the sentence in that case. So I would say that, yes, you could take into account, you know, the admonishments made during the trial that led to the sentence that was revoked. Well, doesn't People v. Baker make it clear that the 401 admonishments apply to a petition to revoke probation? Yes. That's an Illinois Supreme Court case. So how is a petition to revoke probation different than a petition to revoke a conditional discharge? I'm sorry? How is a petition to revoke probation different than a petition to revoke conditional discharge? Well, it wouldn't be. It wouldn't be. It, pardon me? It would not be. Would not be. Right. So the question is, is Young right in his statement? Is it applicable here? I had to put it in because, you know, it's there. Well, it's right if you look at the facts. And the facts were by the times Mr. Young was representing himself, he couldn't be resentenced. It was over. I mean, at best, he could have. Excuse me? Well, at best, maybe it could have started over at the petition to revoke. And then he could have then, he maybe would have said, oh, now I want an attorney. He was just trying to change and go back. So there's nothing new that could have happened to him there other than contempt or something of that nature if he acted out. Well, you could argue that that was still a critical stage and so that, you know, it wouldn't apply in that case. Be that as it may, maybe don't take Young quite as seriously as I did initially. Maybe it just stands for nothing more than the proposition that, as I said, a continuing education of the defendant as to the nature of the case, the charge, the sense and the availability of counsel. If that's the case. And, of course, Determinations 401 does apply. Then I think that we certainly have demonstrated that the judge undertook a careful examination of the defendant. I don't think I can add too much to the discussion. I don't know. Followed by an explicit elicitation of each element and the judge apparently being satisfied. I think you can read that record and that the presumption against dispensing with counsel doesn't overcome what you would reasonably infer from the record. I would just specifically point out that 401 requires determining he, the defendant, understands the following. It does not require the very elaborate finding of fact that the defendant suggests. Looking again at those three points in 401A, the judge had to determine that Mr. Brass knew the nature of the charge. That's what a lot of the time was spent on in the March hearing. The charge, how it would be handled, that the state had the option of choosing and they had chose this way. So that time was spent. He was also asked during that time or told that if he wanted a public defender, he'd have to fill out another financial affidavit. Did he request a financial affidavit at that point to fill out? I don't recall the record indicating that to be the case. So I think the point that might be an issue here is the minimum and maximum sentences prescribed by law. Now, clearly, Judge Kaufman said something to the effect that if this conditional discharge is revoked, you could be sentenced to the same penalties that were available before. Did she ever say anything more than that? I'm afraid I don't recall. Okay. So if there are no further questions. Thank you very much. Thank you, Mr. Stevens. Mr. Rogers, if you have some rebuttal, you may proceed. Thank you. Or reply, pardon me. Just a couple points. First, I think whether 401A applies, the answer to that question, I think, is definitely yes. And not only is it undistinguishable on its facts, under 564C of the sentencing code, someone who is facing a revocation of conditional discharge has the right to be represented by counsel. So there is a statutory right. So then if you look at Campbell, that says that the right to counsel applies, that the 401A administrations have to be given when there's a statutory right. So I think it follows that they had to be given here. Right. Now, they were given when he was arraigned. Right. Yes. And what about the fact that on the March date, Judge Kaufman said, you have the right to be represented by a public defender, but you will have to fill out an affidavit. Actually. Did he ask for one? Actually, if I can correct Your Honor, I believe that was Judge Hanson on the 14th. Okay. Okay, and I think that's Did he ask for one? The record doesn't show that. So I don't know the answer. I think I would not quarrel with saying that you can infer that he didn't. He did not ask for one on the record. There's none in the record that he submitted. He obviously didn't fill one out and file it. But I'm glad you asked that because that was one of the points I wanted to mention, is that when you come back three weeks later, one of the things that Judge Kaufman, from my recollection of the record, that what she doesn't say to Mr. Brass is, remember, you still do have the right, not only the right to counsel, but the right to appointed counsel, and I can do that for you today. Now, yes, Mr. Brass had been told three weeks earlier you can have appointed counsel to fill out the affidavit. But, again, given the status of this record, I think it's quite possible that Mr. Brass either might not have remembered that or might have thought, well, that was my one time only. I had to do it that day. I didn't do it that day. So he's not telling me I can do it today. I guess I can't. Well, but he was reminded on December 12th also that he could represent himself. Well, it's not a question of whether he knew he could represent himself. Or have counsel. Yes, and he, December 12th of 2011. Yes, that's right. But that was kind of during the period of time when he was, I think, wishing, I guess. Thinking about whether or not he could afford to hire counsel. Right. He didn't know if he could afford counsel. Right. And you would have the same problem. I mean, that's before February 14th. My point is that as late as February 14th, he clearly is told, you can have counsel appointed. Fill out this paper. Three weeks later when they come back for the hearing, he's not told that. He is not given that option. And, again, I know I probably pounded this nail more than I need to. But there is a presumption against wavering. And I think that it's important for that to have some teeth, that presumption. And that this case, frankly, provides an opportunity for the court to provide some guidance to trial courts that, you know, to use the often quoted phrase, you know, Supreme Court rules are rules. They're not suggestions. And although there does have to be only substantial compliance, substantial is not, and I don't mean to make a pun here, substantial is not an insubstantial word. It is a significant word. Substantial means substantial. It doesn't mean approximate. It doesn't, you know, all of that. And that if the best practice is to give all the admonishments on the day of the proceeding in which the defendant is being allowed to represent himself, then do that or come as close as you can. And if we're going to say that gaps of seven months are too long, then gaps of 15 months certainly shouldn't be too long. So you think we should decide this not on the substance but on the time that has gone by? You think that's your stronger case or what? You keep referring to the time frame. Well, the time frame has to do with whether there's substantial compliance. If I tell you, you know, and unfortunately we've all seen cases that can drag on for years. If I'm told today, you know, in my arraignment that I, you know, I'm given all of the right admonishments and then years go by, the case goes through whatever generations cases go through. And, you know, in 2015, 2016, I represent, I walk into court and I say, you know what, I think I want to represent myself. And the judge says, sounds good to me, let's go. Now that's not substantial compliance. In part because of the time lapse. Not because of any deficiency in the admonishments when they were given, but simply because they erode over time. So, again, I would ask for the relief that I asked for earlier. Thank you. Thank you. All right, thank you for arguments this morning, counsel. We will take the matter under advisement. We will decide the case in due course and we will stand in recess now to get ready for our next case.